# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED** JUN 0 1 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. **18MJ2957**
HP Computer Serial #8CC73700NY; Apple phone Serial )
#F2LT3KT6HFY8; HP Laptop, Serial #5CD737BPWJ )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1344 and | Bank Fraud; and |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |

The application is based on these facts:

See Affidavit of Postal Inspector Darin M. White.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Darin M. White, Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 1, 2018

*Judge's signature*

City and state: San Diego, California     Mitchell D. Dembin, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A
## PROPERTY TO BE SEARCHED

The electronics devices to be searched are described as:

    a.    a Hewlett Packard All-in-one Computer,
Serial #8CC73700NY,
**(Digital Device 1)**

    b.    an Apple phone,
Serial # F2LT3KT6HFY8
Model: iPhone 7 Plus
**(Digital Device 2)**

    c.    a Hewlett Packard Pavilion Laptop,
Serial # 5CD737BPWJ
**(Digital Device 3)**

and currently being held as evidence by USPIS in San Diego, California, in the Southern District of California.

## **ATTACHMENT B**

## **ITEMS TO BE SEIZED**

Authorization to search the **TARGET DIGITAL DEVICES** described in **Attachment A** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **TARGET DIGITAL DEVICES**. The seizure and search of the **TARGET DIGITAL DEVICES** will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the **TARGET DIGITAL DEVICES** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of **October 1, 2017 to May 23, 2018**:

1. Communications, records, or data including emails, text messages, photographs, web browser data, audio files, videos, or location data:

    a. tending to identify other individuals involved in the scheme;

    b. tending to identify the personal identifying information of others;

    c. tending to identify the locations of PHONG while engaged in the scheme;

**which are evidence of violations of 18 U.S.C. § 1344 Bank Fraud and §§ 1028A** Aggravated Identity Theft.

The seizure and search of the **TARGET DIGITAL DEVICES** shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Darin M. White, being duly sworn, declare and state:

### INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search the following electronic devices:

    a. a Hewlett Packard All-in-one Computer, Serial #8CC73700NY, **(Digital Device 1)**

    b. an Apple phone, Serial # F2LT3KT6HFY8 Model: iPhone 7 Plus **(Digital Device 2)**

    c. a Hewlett Packard Pavilion Laptop, Serial # 5CD737BPWJ **(Digital Device 3)**

as described in Attachment A, and hereinafter referred to as **Target Digital Devices**, and seize evidence of crimes, specifically, 18 U.S.C. § 1028A Aggravated Identity Theft and 18 U.S.C. § 1344 Bank Fraud.

2. Postal Inspectors in San Diego, seized the **Target Digital Devices** on May 23, 2018, from Steven Phong (PHONG), after he was arrested on a federal warrant and a federal search warrant of his residence, based on a complaint issued out of the Southern District of California charging him with one count of bank fraud, in violation of 18 U.S.C. § 1344 and one count in violation of 18 U.S.C. § 1028A Aggravated Identity Theft. The **Target Digital Devices** are currently in the possession of the Postal Inspection Service and located at the San Diego Field Office in San Diego, California.

3. Based on the information below, there is probable cause to believe that a

search of the **Target Digital Devices** will produce evidence of the aforementioned crimes, as described in Attachment B.

## EXPERIENCE AND TRAINING

4. I am a Postal Inspector employed by the United States Postal Inspection Service (USPIS) in San Diego, California. I have been employed as a Postal Inspector since March 2008, and am currently assigned to the Mail Theft and Violent Crimes Team. My primary responsibility is the investigation of identity theft and fraud involving the U.S. Mail. While conducting my duties, I am in contact with other law enforcement contacts and have spoken with other law enforcement personnel, suspects, victims, and witnesses and learned different methods by which the crime of identity theft and fraud is committed. I have completed a forty (40) hour POST certified course on Identity Theft. Prior to that, I was employed as a Diversion Investigator for the Drug Enforcement Administration for 5 years where I was responsible for conducting narcotics and fraud investigations. Based on my training, experience, and speaking with other investigators, I know that financial crimes often involve a complex organization of multiple individuals acting together to conspire, aid or abet. In many cases, individuals who pass stolen and altered checks are part of an elaborate "check ring." I also know that mail theft and check cases also correlate with credit card fraud. The subjects often interchange the two, as is the case in this investigation. In these cases, multiple individuals play different roles in the scheme, such as those who steal the checks, those who obtain counterfeit identifications, those who enter a business and use the check. These groups of individuals use various means of communication, such as cell phones, text message, chat rooms, social media networks, and instant messaging. I also know these individuals will travel together to commit these crimes and that evidence of their location history will typically be found on the subjects' cellular phones.

5. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the

2

information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of reports and statements, upon conversations with other Postal Inspectors, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

**FACTS SUPPORTING PROBABLE CAUSE**

6. On or about November 6, 2017, USPIS received a mail theft complaint from Smartspace (SS), located in San Diego, CA 92123. SS manages the office space located at 4455 Murphy Canyon Road, where several tenants share a common mailbox. The complaint indicated SS had video of an unknown bald, middle-aged man "fishing" mail out of their mailbox on two different occasions. The complaint also indicated there were checks stolen from the buildings' tenants and were altered and negotiated in the name Stephen Phong.

7. On November 30, 2017, I met with a representative from SS. The SS representative provided me with a thumb drive that contained video surveillance of the mail theft as well as copies of the checks that were stolen. I later reviewed the video surveillance from SS, which shows the same subject on two different occasions (November 2nd and November 5th, 2017). The subject is seen "fishing" mail from the outgoing mail slot. I recognized the subject in the video as Nolan Acierto. I recognized Acierto because he had negotiated additional checks during the investigation from additional mail theft victims.

8. I reviewed copies of the stolen checks and provided the copies to a Wells Fargo Bank investigator. Wells Fargo is a federally insured financial institution. I later received detailed information about the transactions along with a surveillance image. The

3

checks were stolen from individual tenants from SS's building. One of the stolen checks, check #1497 was made payable to STEPHEN PHONG in the amount of $2,450.09 on the account of Golden Seller Inc. (GSI). On November 30, 2017, I contacted the owner of GSI in regards to check #1497. The owner informed me the check was originally made payable to his landlord in the amount of $1,050.00.

9. On November 30, 2017, I received and reviewed the bank transaction information for check #1497. Check #1497 was negotiated at the Wells Fargo Bank Branch, located at 9360 Clairemont Mesa Blvd., San Diego, CA 92123. The suspect conducting the transaction presented a California Driver's License (CDL) issued to STEPHEN PHONG. A surveillance image of the transaction depicted an Asian male, I recognized from previous surveillance images as Nolan Acierto. Acierto was seen in the bank surveillance image wearing a gray t-shirt.

10. On December 21, 2017, I arrested Acierto on an outstanding federal arrest warrant at the East County Regional Center without incident. During a search incident to arrest, a wallet, rental car keys, and a cell phone were recovered. A review of the wallet contents showed a Victoria Secret's Rewards card in the name STEVEN PHONG along with three additional access cards in names not belonging to Acierto. It was determined after further investigation that the rental car Acierto was driving was rented using an identity theft victim's information. I spoke with the victim, Reymond Yoo who indicated he had lost his wallet awhile back, which included his CDL. Yoo explained that he did not know Acierto, nor did he give Acierto or anyone else permission to using his personal identifying information.

4

11. On January 3, 2018, Nolan Acierto was indicted by a Federal Grand Jury in the Southern District of CA, on charges of 18 U.S.C. § 1028A Aggravated Identity Theft; 18 U.S.C. § 1708, Mail Theft; and 18 U.S.C. § 1344 Bank Fraud.

12. On January 10, 2018, I was in contact with San Diego County Sheriff's Deputy F. Baclagan in regards to the case. Deputy Baclagan had arrested Acierto on November 17, 2017, on state charges related to check fraud. During the arrest Acierto had STEVEN PHONG's CDL in his possession along with other identity theft related documents. Deputy Baclagan informed me he had completed a review in reference to a state search warrant on the phone recovered from Acierto at the time of his November arrest. Deputy Baclagan informed me he found documentation on Acierto's phone that Acierto had made a payment for a storage unit. Deputy Baclagan provided me with an image of a storage rental payment for the storage unit in Acierto's name. The image showed what appeared to me as a partial receipt for payment. The header for the receipt was "All American Self Storage, 6225 El Cajon Blvd, San Diego, CA 92115. The receipt listed the "tenant" as Nolan F. Acierto. The receipt also listed a payment for October 2017. Deputy Baclagan also provided me with images of business checks, different ID's and credit card numbers that Acierto was sharing with other suspects, including STEVEN PHONG. One of the text messages from PHONG to Acierto stated the following, "I need my IDs back. I found someone who will use them and help me out at the same time." Acierto responded by texting "Wtf does that mean," and PHONG responded with a text stating "Means what it said. Those my IDs and I found someone who could use them and help me at the same time." (My understanding of the text messages back and forth show PHONG's knowledge of Acierto using his CDL to negotiate checks and that he found someone else who was willing to do the same thing).

13. On January 12, 2018, I conducted a brief review of the cell phone I recovered from Acierto during my arrest of him on December 21, 2017. A federal warrant authorized the review of the phone was signed in the Southern District of California on January 3, 2018. I reviewed several messages that showed Acierto discussing and trading credit card numbers with other suspects. One particular message on December 8, 2017, was between Acieto and phone number (619) 305-8517 (STEVEN PHONG'S phone number). The message from Acierto stated "Please stamp this for REYMOND YOO, CVV 977." Two additional messages were sent from Acierto stating, "This one too, REYMOND YOO," and "LAST FOUR IS 9215." I was familiar with Yoo, who is previously mentioned in this affidavit. Yoo was identified as an identity theft victim, and Acierto was driving the rental car rented using Yoo's personal identifying information.

14. On January 18, 2018, I obtained a Federal Search Warrant #18MJ0261, for a storage unit belonging to Nolan Acierto. The storage unit (1068) was located at All American Self Storage, 6225 El Cajon Blvd., San Diego, CA 92115. On January 19, 2018, the warrant was executed and several items of evidentiary value were seized. The items included mail addressed to STEVEN PHONG at 6560 Montezuma Rd., #102, San Diego, CA 92115 (PHONG's residence), a "statement" notebook with handwritten credit card numbers and expiration dates, directions for a "Manual Code Printer Type 68A" which provides instructions for a credit card embosser, and embossing film printed with credit card numbers and the names "STEVEN PHONG" and other co-conspirators.

15. On February 1, 2018, I received a court order for the phone number (619) 305-8517. The court order was sent to T-Mobile, the service provider for the phone number. On or around March 9, 2018, I received the subscriber results and tolls for the phone number. The phone was subscribed to STEVEN PHONG with a listed address of

PHONG's residence. The phone number was activated on August 7, 2017 and was suspended on March 2, 2018, due to non-payment.

16. During the mail theft investigation of Acierto and additional co-conspirators, I received information on a crime bulletin in January 2018, from Ulta Beauty (Ulta). Ulta is a publicly traded company with a chain of retail stores selling beauty products throughout the United States. The bulletin listed several suspects including a suspect by the name "Steven Phoung." I reviewed the bulleting and recognized the image of "Steven Phoung" as the suspect I know as STEVEN PHONG. The bulletin stated "Phoung" and other suspects were making purchases with pre-paid Wal-Mart cards with their names embossed on them, yet when the receipt would print out, there would be another credit card number (last 4 digits) on the receipt. The bulletin detailed the loyalty points showing on the receipt were linked to another Ulta customer's Ultimate Rewards account. Ulta Loss Prevention determined that several of their customer's credit cards numbers were utilized by Phong and his crew to make the purchases. Ulta Loss Prevention identified several customers who stated they were in possession of their actual credit cards and didn't authorize the purchases. Ulta Loss Prevention informed me that from January 16, 2018, through April 17, 2018, STEVEN PHONG has used the personal credit information of at least fifteen (15) Ulta customers on thirteen (13) occasions resulting in a financial loss to ULTA in excess of $3,000. Ulta Loss Prevention also informed me that PHONG and his associates are responsible for utilizing the personal credit information of over ninety (90) customers on approximately eighty (80) occasions resulting in a total financial loss to Ulta of over $20,000. Ulta Loss Prevention informed me that many of the occasions were attempts and resulted in the suspects not being able to successfully complete the transaction.

17. On April 17, 2018, I was contacted by Ulta Area Loss Prevention Manager, D. Lee, in regards to the investigation. Lee informed me that PHONG had just left their

7

Mission Valley location after making a purchase with a counterfeit credit card. Lee stated PHONG had entered the location and directly went to the Personal Care Appliance section and selected a $399.00 Dyson hair dryer. Lee informed me a local Loss Prevention agent was in the store and observed PHONG's activities. Lee informed me PHONG took the hair dryer to a register and made payment for the hair dryer with a "pink credit card" and provided information for an Ulta Loyalty Account in the name of "Xin Gao." Lee stated PHONG swiped the credit card at the register and the account was later determined to belong to an actual Ulta Credit Card account in the name E.B. Lee provided me with surveillance photos of the transaction and of PHONG in the store. I recognized the subject as PHONG. Lee also provided images taken by the Loss Prevention agent in the parking lot of a black Lexus, that PHONG was driving. The photo clearly showed a CA License plate #5YHL003. PHONG's Previous law enforcement indices checks have shown that the vehicle is a 2006 Lexus registered to PHONG at PHONG's residence. Lee provided me the loyalty account information for "Xin Gao" which included an address, phone number and email address. The address listed on the account is the SUBJECT PREMISES address minus the apartment number. The email listed is pinkeye619@gmail.com. Lee also provided me with the contact information for the victim's Ulta credit account (E.B.) that was used to make the purchase.

18. On April 26, 2018, I spoke to E.B. in regards to the investigation. E.B.'s credit card number was used by PHONG on April 17, 2018, at the Ulta store located in San Diego, CA 92108, in the amount of $430.99. E.B. stated she lives in Colorado and currently has her Ulta credit card in her possession. E.B. stated she did not know PHONG nor give him or anyone else permission to use her Ulta credit card number. E.B. informed me she opened the credit card while making a purchase at an Ulta store about five months prior. E.B. stated she has not used her card since receiving it shortly thereafter in the mail.

19. On May 21, 2018, I obtained a Federal arrest warrant for PHONG, and a Federal search warrant for PHONG's residence. On May 23, 2018, PHONG was arrested shortly after leaving his residence while driving a Lexus loaner car. A search of PHONG's person and vehicle incident to arrest lead to the discovery of several items of evidentiary value. Among the items were over forty (40) access cards that were found throughout the vehicle. PHONG also had his CDL and the CDL for Xin Gao in his wallet. Also in the wallet was a hotel "key" packet from the Four Points Sheraton. The packet had two (2) hotel keys and listed the room number "1034," with a checkout date of May 24, 2018. I later spoke with a representative from the Four Points Sheraton in regards to the found keys. The representative was not able to provide any information as far as the name of the person who occupied the hotel room due to hotel policy. However, the representative was able to confirm the hotel room had been checked in by a single individual and that the single individual whose keys I now had in my possession had yet to check out.

20. After the arrest of PHONG, Postal Inspectors executed the search warrant at PHONG's residence. The search of the residence also yielded several items of evidentiary value including a "magstripe encoder" which is used to connect to a computer to "write" or encode credit card information onto a blank card. Postal Inspectors also seized written notes containing credit card combinations and expirations dates. During the search of PHONG's vehicle and residence, Postal Inspectors recovered a Hewlett Packard "All-in-one" computer, a Hewlett Packard Pavilion laptop and an Apple iPhone (**Target Digital Devices**).

21. During the investigation of PHONG, I have identified multiple suspects that are believed to be conspiring with him for the purpose of stealing mail, committing identity theft, altering checks and committing bank fraud by utilizing identity theft victim's credit accounts to make purchases at various retail stores. I have also yet to identity "all" suspects

9

and believe that additional suspects will be identified after a review of the **Target Digital Devices**. I also believe that the review of the **Target Digital Devices** will assist investigators by showing location histories of both suspects. I have utilized location information in past investigations to show the suspect(s) were at a certain location when the crime in question was committed. In November 2017, ACIERTO was also arrested by local authorities and found to be in possession of Stephen PHONG's CDL. I also believe that the review of the **Target Digital Devices** will assist investigators by showing location histories of both suspects. I have utilized location information in past investigations to show the suspect(s) were at a certain location when the crime in question was committed.

22. Based upon my experience and training I believe analysis of the **Target Digital Devices** will reveal evidence and/or victims of mail theft or identity theft. Based on my training and experience, I know in cases of identity theft, suspects often commit other crimes such as check fraud or making counterfeit identification or access cards. For this reason, the suspects usually gather information, process the information and often store the information on the above-described devices.

23. The presence of identification, financial instruments, and other documents in the names of persons other than the suspects will likely provide evidence of other unsolved thefts. I know the type of crime alleged to have occurred here is conspiratorial in nature and is often perpetrated against many victims. The presence of other personal identifying information on the **Target Digital Devices** will enable me to locate other victims of theft.

24. I know in the case of identity theft, suspects often collect identification cards, mail, credit cards, checks, internet login information, passwords, and other forms of personal identifying information in order to build financial profiles that can be used to commit identity theft. Suspects often keep these profiles, even after the victims have taken measures to stop any future financial fraud from occurring. Suspects maintain these used

profiles because they will often attempt to use the financial profile again in the future once the victims have become complacent. Such financial profiles are often found on printed documents, handwritten documents, and/or electronic storage media such as computers, cell phones, external hard drives, and Flash drives.

25. I also know based on my training and experience that many current cellular telephones are basically small computers. Many of them have the ability to send text message, email messages, access the internet, and store mass quantities of information. I know that many people use their phones as computers and it's feasible that a cellular telephone could have been used in this case to communicate with additional known and unidentified suspects.

26. Based on my training and experience and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Digital Devices** contain evidence of the aforementioned violations, including communications, records, or data, including but not limited to emails, text messages, documents, templates, internet search history, photographs, audio files, videos, or location data:

    a.    tending to identify other individuals involved in the scheme;

    b.    tending to identify the personal identifying information of others;

    c.    tending to identify the locations of PHONG while engaged in the scheme;

27. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a suspect's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11

28. Based upon my experience and investigation in this case, I believe that PHONG was involved in identity theft, bank fraud and conspiring with other suspects to commit mail theft. Based upon my experience and training, consultation with other law enforcement officers, and all the facts and opinions set forth in this affidavit, I believe that information relevant to this investigation, such as check images or files, internet searches of bank locations, telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Digital Devices**. Given those facts, I respectfully request permission to search the **Target Digital Devices** for data beginning on October 1, 2017, up to and including May 23, 2018.

## METHODOLOGY

29. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to

forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

30. Following the issuance of this warrant, I will collect the subject cell phone and subject it to analysis. All forensic analysis of the data contained within the telephones and the memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

31. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

32. Therefore, I respectfully request that the Court issue a warrant authorizing Postal Inspectors and/or other federal and state law enforcement personnel specially trained in digital evidence recovery, to search the items described in Attachment A, and seize items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Darin M. White
Postal Inspector, USPIS

SUBSCRIBED and SWORN to before me this ___1___ day of June 2018.

HON. MITCHELL D. DEMBIN
United States Magistrate Judge

13

## **ATTACHMENT A**

## **PROPERTY TO BE SEARCHED**

The electronics devices to be searched are described as:

    a.    a Hewlett Packard All-in-one Computer,
Serial #8CC73700NY,
 **(Digital Device 1)**

    b.    an Apple phone,
Serial # F2LT3KT6HFY8
Model: iPhone 7 Plus
 **(Digital Device 2)**

    c.    a Hewlett Packard Pavilion Laptop,
Serial # 5CD737BPWJ
 **(Digital Device 3)**

and currently being held as evidence by USPIS in San Diego, California, in the Southern District of California.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the **TARGET DIGITAL DEVICES** described in **Attachment A** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **TARGET DIGITAL DEVICES**. The seizure and search of the **TARGET DIGITAL DEVICES** will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the **TARGET DIGITAL DEVICES** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of **October 1, 2017 to May 23, 2018**:

1. Communications, records, or data including emails, text messages, photographs, web browser data, audio files, videos, or location data:

    a. tending to identify other individuals involved in the scheme;

    b. tending to identify the personal identifying information of others;

    c. tending to identify the locations of PHONG while engaged in the scheme;

**which are evidence of violations of 18 U.S.C. § 1344 Bank Fraud and §§ 1028A** Aggravated Identity Theft.

The seizure and search of the **TARGET DIGITAL DEVICES** shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.